ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| ELIUT BESARES ROSADO<br><br>RECURRENTE<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>RECURRIDOS | KLRA202500061 | *REVISIÓN JUDICIAL* procedente del Departamento de Corrección y Rehabilitación<br><br>Número: 12696-24 |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Alvarez Esnard, y la jueza Prats Palerm

Brignoni Mártir, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de marzo de 2025.

El señor Eliut Besares Rosado (el señor Besares Rosado o el recurrente), miembro de la población correccional de la Institución de Máxima Seguridad de Ponce, comparece por derecho propio y de forma *pauperis* mediante un escrito intitulado *Apelación de Custodia*. Nos solicita la revocación de la *Resolución* emitida y notificada el 24 de octubre de 2024 por el Departamento de Corrección y Rehabilitación de Puerto Rico (el DCR o la agencia). En virtud del referido dictamen, la agencia resolvió que el recurrente debe continuar el proceso de rehabilitación bajo la clasificación de custodia máxima.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido del Comité de Clasificación y Tratamiento.

**I.**

Surge del expediente ante nuestra consideración que, el señor Besares Rosado cumple una condena de separación permanente de la sociedad en máxima custodia por una serie de delitos impuestos en distintas sentencias, entre ellos, asesinatos en primer grado, conspiración,

uso ilegal de armas, y posesión, distribución y venta de sustancias controladas. Enfrenta, a su vez, una pena por delitos vinculados con posesión de sustancias controladas en institución correccional.

En atención a su proceso de rehabilitación, el 7 de octubre de 2024, el DCR rindió un *Informe para Evaluación del Plan Institucional* dirigido al Comité de Clasificación y Tratamiento (Comité). [1] En este escrito, recomendó que el señor Besares Rosado permaneciera bajo la clasificación de custodia máxima.

Eventualmente, el 24 de octubre de 2024, el Comité emitió un escrito intitulado *Acuerdo del Comité de Clasificación y Tratamiento* en el cual determinó que le corresponde continuar en el nivel de custodia máxima.[2] Reconoció que la escala de reclasificación arrojó el resultado de custodia mínima. No obstante, en aras de sostener su determinación, recurrió a las modificaciones discrecionales que motivan la clasificación máxima, a saber: (1) historial de violencia excesiva, (2) reincidencia habitual y (3) desobediencia antes las normas.

Ese día, de conformidad con lo anterior, dicho Comité dictó y notificó *Resolución* —fundamentada en extensas determinaciones de hechos y conclusiones de derechos— en la cual resolvió que la custodia máxima es el nivel adecuado para el miembro de la población correccional. [3] Al respecto, estableció lo siguiente:

> El MPC cumple sentencia de Reclusión Perpetua y se le impone una pena de Separación Permanente de la Sociedad, por Asesinato, Conspiración, y Ley de Armas. Por lo que el Comité de Clasificación y Tratamiento acoge modificación discrecional, Historial de Violencia Excesiva, el MPC di[o] muerte a dos seres humanos, en el primer caso, en una discusión en El Rincón de la Paz en Humacao, con su arma de fuego que poseía sin licencia le disparó a un hombre, por el otro Asesinato en el Barrio Martorell en Yabucoa, tuvo problemas con un hombre y lo asesinó de disparos, sin embargo, el mpc niega ser partícipe de este segundo hecho, siendo encontrado culpable en un Tribunal más allá de duda razonable y siendo declarado Delincuente Habitual y se le impuso sentencia de Reclusión Perpetua. Dicho acto quebrantó las normas que garantizan la sana convivencia en sociedad, perfilándose así, como un ciudadano en completo desdén del bienestar de su comunidad y un peligro para la sociedad en general. Se utiliza modificación discrecional para nivel de custodia más alto, Desobediencia ante las normas, cuenta con historial de querellas

---

[1] Copia del expediente administrativo, págs. 6-9.
[2] Copia del expediente administrativo, págs. 1-5.
[3] Copia del expediente administrativo, pág. 10-16.

disciplinarias relacionadas a Posesión, Distribución, uso, venta, o introducción de teléfonos celulares o su tentativa, Posesión, introducción, uso, venta, o distribución de narcóticos, sustancias controladas o drogas y/o la posesión de materiales asociados con el uso de sustancias controladas y Posesión de celulares o su tentativa, posesión de celular. También fue sentenciado por delitos cometidos en prisión relacionados a sustancias controladas.[4]

Así establecido, la agencia dispuso que requiere un espacio de seis (6) meses para referir e integrar al recurrente al tratamiento de modificación de conducta, lo cual es necesario para la consideración de un nivel de custodia menos restrictivo.[5]

Oportunamente, el 2 de noviembre de 2024, el señor Besares Rosado sometió una petición de reconsideración ante la agencia.[6] Entre otros extremos, argumentó esencialmente que ha cumplido de manera satisfactoria con el Plan Institucional. A su vez, indicó que no ha tenido ninguna sanción disciplinaria. No obstante, evaluados sus argumentos, el 12 de diciembre de 2024, el DCR emitió una decisión, notificada el 16 de diciembre de 2024, en la cual declaró que no acoge su solicitud de reconsideración.[7] En lo pertinente, resaltó el siguiente historial fáctico vinculado con el recurrente:

> En el caso que nos ocupa, [el señor Besares Rosado] fue sentenciado como Delincuente Habitual y se le impone una pena de Separación Permanente de la Sociedad, mediante reclusión Perpetua en prisión por los delitos de Asesinato en Primer Grado (2 casos), Conspiración (2 casos), Artículo 5.04 de la Ley de Armas (7 casos), Artículo 5.07 de la Ley de Armas (4 casos), Artículo 5.15 de la Ley de Armas y Artículo 406 de Sustancias Controladas. Cumple el mínimo de su sentencia el 12 de septiembre de 2030 y el máximo de la sentencia es una Reclusión Perpetua. De la sentencia impuesta [h]a cumplido aproximadamente 18 años y 3 meses.
>
> Cuenta con historial delictivo previo. Cumplió una sentencia federal 1996 a 2001. Además, cumplió sentencia de 2017 al 2023 por Sustancias Controlada[s] y Ley de Armas. Le resta por cumplir una probatoria federal.
>
> Clasificado inicialmente en custodia máxima el 5 de septiembre de 2006. Custodia que posee al momento.
>
> El Comité de Clasificación y Tratamiento determinó utilizar las modificaciones discrecionales: (1) "Historial de Violencia Excesiva" considerando que indic[ó] que el 17 de agosto de 2006 asesin[ó] a Jesús Álvarez Cruz en el Barrio Martorell en Yabucoa. Lo acus[ó] el señor Rafael Gómez a quien conocía y tuvo problemas con él. Esta persona fue asesinada aproximadamente a las 11:10 pm. El

---

[4] Copia del expediente administrativo, pág. 14.
[5] Copia del expediente administrativo, pág. 15.
[6] Copia del expediente administrativo, págs. 17-18.
[7] Copia del expediente administrativo, págs. 19-20.

confinado no acepta la comisión de esta muerte. También asesin[ó] a Jesús Delgado Flecha en el Negocio El Rincón de la Paz en Humacao. (2) "Desobediencias ante las Normas" ya que mientras se encontraba en institución Máxima de Ponce en su celda se ocup[ó] un cargador de celular, 8 envolturas plásticas que en prueba de campo arrojaron ser heroína. Fue sentencia[do] por delito de la Ley de Sustancias Controladas estando en prisión.

Por otro lado, el Comité de Clasificación y Tratamiento consider[ó] otros aspectos establecidos en el Manual para la Clasificación de Confinados como lo son la fecha prevista para referir el caso ante la Junta de Libertad Bajo Palabra (12 de septiembre de 2030, dentro de 6 años) y la fecha prevista de excarcelación (Reclusión Perpetua).

Tomamos conocimiento de que cuenta con un cuarto año de Escuela Superior. Complet[ó] Taller de Jardinería Comercial y Residencial. Se encuentra integrado en las Terapias de Regulación de Coraje y Control de Impulsos. Deberá continuar observando buenos ajustes institucionales y cumpliendo con el plan institucional trazado por el Comité de Clasificación y Tratamiento[.]

Por lo antes señalado se concurre con las determinaciones tomadas por el Comité de Clasificación y Tratamiento[.][8]

Inconforme, el 14 de enero de 2025, el señor Besares Rosado entregó su recurso intitulado *Apelación de Custodia* al personal correspondiente de la Institución de Máxima Seguridad en Ponce. Así las cosas, el 27 de enero de 2025, este Tribunal de Apelaciones recibió su escrito, que incluyó una serie de argumentos acogidos como señalamientos de error:

**En esta oca[s]ión, el Sr. Eliut Besares Rosado Rosado ("recurrente" o "Eliut Besares Rosado") plantea que la resolución emitida por el Comité de Clasificación y Tratamiento ("CCT") no fue conforme con el Manual para la Clasificación de Confinados.**

**Según podemos demostrar, entendemos que los argumentos tomados por el Comité de Clasificación son erróneos e irra[z]onables ya que han sido tomado de manera arbitraria y más aún han usado argumentaciones que no son válidas.**

Sometido el recurso, el 3 de febrero de 2025, esta Curia dictó *Resolución* a los fines de ordenar a la parte recurrida a presentar dentro del término de diez (10) días copia del expediente administrativo. Acatada nuestra orden, el 11 de febrero de 2025, el Departamento de Corrección y Rehabilitación por conducto de la Oficina del Procurador General de Puerto Rico presentó una *Moción en Cumplimiento de Resolución* acompañada del expediente solicitado.

---

[8] Copia del expediente administrativo, págs. 19.

En aras de ofrecer un despacho justo y eficiente del presente recurso, prescindimos del escrito oposición de la parte recurrida según nos permite la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Así establecido, nos corresponde discutir el marco legal pertinente a la controversia ante nuestra consideración.

**II.**

**A.    Revisión judicial de las determinaciones administrativas**

En nuestro esquema jurídico, una parte inconforme con una determinación u orden administrativa final tiene el derecho a recurrir en revisión judicial ante el Tribunal de Apelaciones de Puerto Rico. Véase Artículo 4.006(c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley 201-2003, 4 LPRA sec. 24y, según enmendada; Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 38-2017, 3 LPRA sec. 9672, según enmendada (LPAU). Así pues, el derecho a cuestionar la determinación administrativa es parte del debido proceso de ley protegido por la Constitución de Puerto Rico. *ACT v. Prosol et als.*, 210 DPR 897, 908 (2022); *Assoc. Condomines v. Meadows Dev.*, 190 DPR 843, 847 (2014).

Como norma general, en el trámite revisorio, los foros apelativos estamos llamados a conceder amplia deferencia a las decisiones agenciales. *Otero Rivera v. USAA Fed. Savs. Bank*, 2024 TSPR 70, 214 DPR ___ (2024); *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026 (2020)*.* Solo es posible sustituir "el criterio de la agencia por el del tribunal revisor cuando no exista una base racional para explicar la decisión administrativa". *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743, 754 (2024)*; Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591 (2020). Ahora bien, no podemos imprimir un sello de corrección a las determinaciones o las interpretaciones administrativas irrazonables, ilegales o contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021).

Por tal motivo, nuestra deferencia cede cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos; (3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *Voilí Voilá Corp. et al. v. Mun. Guaynabo, supra,* págs. 754-755; *Super Asphalt v. AFI y otro, supra*, pág. 819.

No obstante, los tribunales apelativos revisores no intervendremos en las determinaciones de hechos siempre y cuando surja del expediente administrativo evidencia sustancial que las respalde. *The Sembler Co. v. Mun. De Carolina,* 185 DPR 800, 821-822 (2012). La evidencia sustancial es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Capó Cruz v. Jta. de Planificación et al., supra*, pág. 591; *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).

En cambio, tenemos autoridad para revisar las conclusiones de derecho en todos sus aspectos. Sección 4.5 de la LPAU, *supra*, 3 LPRA sec. 9675. Es decir, ostentamos la facultad para revisarlas completa y absolutamente. *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 745 (2012); *Assoc. Ins. Agencies, Inc. v. Com. Seg*. P.R., 144 DPR 425, 436 (1997). Sin embargo, ello no implica "la sustitución automática del criterio e interpretación del organismo administrativo". *Capó Cruz v. Jta. Planificación et al.*, *supra,* pág. 591; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

De conformidad con nuestro esquema revisorio, es menester destacar que los dictámenes de las autoridades correccionales merecen gran deferencia. *Cruz Negrón v. Administración de Corrección*, 164 DPR 341, 357 (2005). Al respecto, el Tribunal Supremo de Puerto Rico establece lo siguiente:

> Por lo general, la composición de estos comités la conforman peritos en el campo tales como técnicos sociopenales y oficiales o consejeros correccionales. Estos profesionales cuentan con la capacidad, la preparación, el conocimiento y la experiencia necesarios para atender las necesidades de los confinados y realizar este tipo de evaluaciones. Por esta razón, una

determinación formulada por el referido Comité debe ser sostenida por el foro judicial siempre que no sea arbitraria o caprichosa y esté fundamentada en evidencia sustancial. Es decir, siempre que la decisión sea razonable, cumpla con el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta, el tribunal deberá confirmarla. Íd., págs. 354-355.

A la luz de su conocimiento especializado, la determinación agencial merece deferencia sustancial aun cuando no sea la única razonable. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1003 (2011). Esta normativa contempla que las instituciones correccionales "están en mejor posición para resolver las controversias surgidas en torno a los asuntos que le fueron encomendados por ley". *Cruz Negrón v. Administración de Corrección*, *supra*, págs. 355-356.

**B. Clasificación de custodia según la evaluación por parte del Comité de Clasificación y Tratamiento**

La Constitución de Puerto Rico establece como política pública del Estado reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva, y así propender al tratamiento adecuado de la población correccional, y posibilitar su rehabilitación moral y social. Véase Const. PR, Art. VI, Sección 19, LPRA Tomo I. En cumplimento de este mandato, el Artículo 2 del Plan de Reorganización del Departamento de Corrección y Rehabilitación, Ley Núm. 2-2011, según enmendado, 3 LPRA, Ap. XVIII, Art. 2, ("Plan de Reorganización") ordena "la creación de un sistema integrado de seguridad y administración correccional en donde las funciones y los deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad". A esos fines, el Artículo 7(aa) del Plan de Reorganización, *supra*, le concede al Secretario del DCR las siguientes facultades:

> [A]doptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios. 3 LPRA, Ap. XVIII, Art. 7(aa).

En esa dirección, el Secretario de dicha agencia adoptó el Manual para la Clasificación de los Confinados, Reglamento Núm. 9151 de 22 de

enero de 2020 (Manual de Clasificación (2020) o Reglamento 9151). El referido cuerpo reglamentario incluye un apartado intitulado Perspectiva General en el cual se establece la finalidad del Manual de Clasificación (2020):

> El método de clasificación de confinados es el eje central de una administración eficiente y un sistema correccional eficaz. Por lo tanto, la clasificación de los confinados consiste en la separación sistemática y evolutiva de los confinados en subgrupos, en virtud de las necesidades de cada individuo, y las exigencias y necesidades de la sociedad, desde la fecha de ingreso del confinado hasta la fecha de su excarcelación.
>
> Además de satisfacer las necesidades del confinado, el proceso de clasificación coordina la custodia física de los confinados en los programas y recursos disponibles dentro del Sistema Correccional. De conformidad con lo anterior, se pueden presupuestar fondos de manera adecuada para llenar las necesidades específicas de la institución, del personal y de la población correccional una vez estén clasificados funcionalmente. Más aún, un proceso sistemático de clasificación contribuye a mantener la sociedad protegida de las personas que han violentado las reglas formales.

En virtud de esta reglamentación, el Comité de Clasificación de Confinados tiene amplia discreción para evaluar el progreso del miembro de población correccional en aras de determinar el nivel de custodia aplicable. *Lebrón Laureano v. Depto. Corrección*, 209 DPR 489, 504 (2022). No obstante, la determinación relativa al nivel de custodia exige que se realice un adecuado balance de intereses, según discutido por el Tribunal Supremo de Puerto Rico:

> La determinación administrativa relativa al nivel de custodia asignado a un confinado requiere que se realice un balance de intereses adecuado. Por una parte, estará el interés público de lograr la rehabilitación del confinado, así como mantener la seguridad institucional y general del resto de la población penal; de la otra, estará el interés particular del confinado de permanecer en un determinado nivel de custodia. Además, al momento de determinarse la procedencia de un cambio en el nivel de custodia, deberá considerarse una serie de factores subjetivos y objetivos, para cuya atención se requiere la pericia de la Administración de Corrección. *Cruz v. Administración*, 164 DPR 341, 352 (2005).

A esos fines, el Comité establecido en cada una de las instituciones del DCR responsable de evaluar las necesidades de seguridad y los programas de los confinados sentenciados. Sección 1, Reglamento Núm. 9151, *supra*. En aras de cumplir su deber, le corresponde al Comité revisar los niveles de custodia para los confinados de custodia mínima y mediana cada doce (12) meses. Sección 2, Parte V(D) del Reglamento 9151, *supra*.

No obstante, en casos de confinados bajo custodia máxima, le compete efectuar la revisión cada seis (6) meses una vez hayan cumplido su primer año de sentencia bajo la clasificación de custodia máxima. Íd. Ahora bien, en cuanto a los confinados con sentencia noventa y nueve (99) años le corresponde seguir el siguiente procedimiento:

> Confinados con sentencia de 99 años o más y clasificados inicialmente en custodia máxima como resultado de la sentencia, permanecerán en dicha custodia por cinco (5) años incluyendo el tiempo cumplido en preventiva. Luego de ese periodo de tiempo, serán evaluados. **Estos podrán ser reclasificados al nivel de custodial mediana si, de acuerdo al resultado del instrumento de clasificación, procede.** No se podrá recurrir al uso de la Modificación Discrecional sobre la "Gravedad del delito" ni al uso de los fundamentos "extensión o largo de la sentencia" para mantenerlos en custodia máxima. Íd.

En lo pertinente a la controversia ante nuestra consideración, el Manual de Clasificación (2020) define custodia máxima de la siguiente manera:

> **NIVELES DE CUSTODIA**
>
> - **MÁXIMA** Confinados de la población general que requieren un grado alto de control y supervisión. A estos individuos se les puede restringir de determinadas asignaciones de trabajo y de celda, así como de determinadas áreas dentro de la institución, según se estime necesario por razones de seguridad. Se requerirán por lo menos dos oficiales correccionales como escolta para realizar viajes de rutina o de emergencia fuera de la institución. Se utilizarán esposas, cadenas y grilletes en todo momento mientras los confinados de custodia máxima se encuentren fuera el perímetro de seguridad (la verja o el muro). Estos confinados estarán en celdas y no en dormitorios. Esto no limita la participación del confinado en los programas y servicios. Contarán con un período mínimo de dos (2) horas diarias de recreación física al aire libre, según lo permitan las condiciones climáticas. Sección 1, Reglamento 9151, *supra*.

En estos escenarios "mientras más restrictivo es el nivel de seguridad asignado, con mayor frecuencia se hace la evaluación de reclasificación para determinar si la conducta del recluso amerita una reducción de custodia". *López Borges v. Adm. Corrección*, 185 DPR 603, 609 (2012). Véase, también, *Cruz v. Administración, supra,* pág. 354.

Por su parte, la Sección 7 del Manual de Clasificación (2020) regula el proceso de reclasificación de custodia. Específicamente, el apartado II de esta Sección establece cuál es el objetivo de la reclasificación, y a su vez, preceptúa un procedimiento estandarizado por formularios:

> **El Formulario de Reclasificación de Custodia, Escala de Reclasificación, (Apéndice K) se utiliza para actualizar y revisar la evaluación inicial de custodia del confinado. La reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.**
>
> **La revaluación de custodia se parece a la evaluación inicial de custodia pero recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. Es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución**. Sección 7(II), Reglamento 9151, *supra*. (Énfasis nuestro).

A esos fines, el *Formulario de Reclasificación de Custodia: Escala de Reclasificación de Custodia*, según recogido en el Apéndice K(I) del Manual de Clasificación (2020), dispone una serie de renglones que permiten identificar a aquel confinado que representa un grave riesgo para la seguridad y la operación ordenada de la institución correccional. Los criterios recogidos en este formulario son los siguientes: (1) la gravedad de los cargos y las sentencias actuales; (2) el historial de delitos graves anteriores; (3) el historial de fuga; (4) el número de acciones disciplinarias; (5) la acción disciplinaria más seria; (6) las sentencias anteriores por delitos graves como adulto en los últimos cinco (5) años; (7) la participación en programas institucionales, y (8) la edad al momento de la evaluación. Apéndice K(I), Sección II (1)-(8), Reglamento 9151, *supra*. Mediante estos renglones se asignan una puntuación que incide en el proceso clasificación de custodia, según esbozado en la Sección III(A) en el Apéndice K(I) del Manual de Clasificación:

| | | |
|---|---|---|
| Mínima | = | 5 puntos o menos |
| Mediana | = | 5 puntos o menos si el confinado tiene una orden de detención, de arresto, u orden de detención por violar la libertad bajo palabra o probatoria. |
| Mediana | = | 6-10 puntos en los renglones 1-8 |
| Máxima | = | 7 puntos o más en los renglones 1-3 |
| Máxima | = | 11 puntos o más en los renglones 1-8. |

Obsérvese que los renglones del uno (1) al tres (3) tienen la intención de identificar al confinado que representa un grave riesgo para la seguridad y operación ordenada de la institución. Apéndice K(I), Sección II (1)-(8), Reglamento 9151, *supra*. En el caso de aquellos confinados que obtengan una puntuación de siete (7) o más en los primeros renglones, se recomienda que se coloquen en máxima custodia sin tomar en consideración las puntuaciones en otros renglones. Íd.

No obstante, la consideración de estos reglones no es el único procedimiento que debe ponderar el Comité al momento de asignar una clasificación. Así pues, en ciertas circunstancias le compete acoger las modificaciones discrecionales en el proceso evaluativo para un nivel de custodia más alto.  Sobre este particular, el Manual de Clasificación (2020) aborda la definición de modificaciones discrecionales como el "conjunto de factores específicos de clasificación que el personal puede usar para modificar la puntuación de clasificación de un confinado, pero solamente con la aprobación del supervisor de clasificación". Sección 1, Reglamento 9151, *supra*. Véase, también, *Lebrón Laureano v. Depto. Corrección*, *supra*, págs. 501-502. Estas modificaciones se pueden utilizar para para aumentar o disminuir el nivel de custodia. *Cruz v. Administración, supra,* pág. 353.

En lo atinente a la controversia objeto de este recurso, es menester discutir las modificaciones discrecionales para un nivel de custodia más alto, según descritas en la Sección III(D) del Apéndice K(I) del precitado cuerpo administrativo:

**E. MODIFICACIONES DISCRECIONALES PARA UN NIVEL DE CUSTODIA MÁS ALTO**

Toda modificación discrecional debe estar basada en documentación escrita, proveniente de reportes disciplinarios, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social y cualquier otra información o documento que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional.

.        .        .        .        .        .        .        .

**Historial de violencia excesiva:** El confinado tiene un historial documento de conducta violenta, tales como asesinato, violación, agresión, intimidación con un arma o incendio intencional que no están totalmente reflejadas en la puntuación del historial de violencia. Esta conducta puede haber ocurrido más de cinco años antes, durante un encarcelamiento o mientras estuvo asignado anteriormente a un programa comunitario.

.        .        .        .        .        .        .        .

**Grados de reincidencia:** Se podrán considerar aquellos confinados que han sido sentenciados con Reincidencia Agravada o Habitual por un Tribunal. También podrán incluirse los Declarados Delincuentes Habituales y Separados Permanentemente de la Sociedad.

La pena para el delito en grado de reincidencia constituye un agravante de responsabilidad penal en consideración a la conducta previa antisocial que ha manifestado la persona. Esta medida garantizar[á] la protección de la sociedad y la prevención de la delincuencia mientras produce la rehabilitación moral y social del confinado.

.        .        .        .        .        .        .        .

**Desobediencia ante las normas o rehusarse al plan de tratamiento**: Significa que el confinado presenta una marcada tendencia a desobedecer las normas y reglas de la institución. Esto puede incluir mostrar desinterés en participar de programas de tratamiento y no cumplir o rehusarse al plan de tratamiento trazado y la comisión de delitos en prisión, esto según se desprenda de la documentación apropiada.

Nótese que la determinación del nivel de custodia proviene de un conjunto de criterios y no solo de la puntuación obtenida en la Parte II de la Escala de Reclasificación. *Lebrón Laureano v. Depto. Corrección*, *supra*, pág. 502. No obstante, lo esencial en el proceso de clasificación es que la designación resulte de la totalidad del expediente administrativo, como se discute a continuación:

Toda modificación discrecional para aumentar el nivel de custodia debe estar basada en documentación escrita, proveniente de reportes disciplinarios, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social, y cualquier otra información o documento que evidencie ajustes o comportamiento del confinado contrario a las normas y la seguridad institucional. Íd. Véase, además, la Sección III(D) del Apéndice K(I), Reglamento 9151, *supra*.

Ahora bien, esta determinación admite cuestionamiento de la parte inconforme. Por tanto, el miembro correccional que esté en desacuerdo con la decisión relativa a su custodia podrá recurrir ante el Tribunal de Apelaciones una vez haya acogido el proceso de reconsideración a tenor con la Sección 7(V) establecida en el Reglamento de Clasificación (2020),

*supra*, y en la Enmienda al Manual para la Clasificación de Confinados, Reglamento 9281 de 20 de mayo de 2021.

**III.**

Amparado en su derecho a la revisión judicial, el señor Besares Rosado señala que el DCR incidió al ratificar su confinamiento en custodia máxima. Argumenta que esa determinación es contraria al Manual de Clasificación (2020). Por tanto, manifiesta que le correspondía a la agencia considerar que ha cumplido exitosamente su proceso de rehabilitación. Considera que el Comité de Clasificación concentró su determinación en hechos negativos, mas no contempló su progreso dentro del centro correccional. Por tanto, nos solicita la revocación de la determinación administrativa por resultar errónea, arbitraria y caprichosa.

Luego de evaluar sosegadamente el expediente ante nuestra consideración a la luz del marco legal reseñado, disponemos que la agencia no erró en su determinación. El examen revisorio nos permite concluir que la decisión de ratificar la custodia máxima del confinado descansó en un conjunto de criterios debidamente ponderados por el organismo administrativo y a tenor con el cuerpo reglamentario aplicable. Veamos.

Surge del expediente ante nuestra consideración que, el 7 de octubre de 2024, el DCR rindió un *Informe para Evaluación del Plan Institucional* del señor Besares Rosado en el que recomendó la ratificación de su custodia máxima. [9] En específico, del documento aludido se desprende que el recurrente cumple una serie de condenas, entre ellas, dos (2) delitos por la comisión de asesinatos en primer grado, lo cual implica que enfrenta una reclusión perpetua.[10] Igualmente, en este consta que "[p]osee cargos pendientes por Asesinato en Primer Grado, Conspiración y Ley de Armas y querella disciplinaria".[11] A su vez, en la

---

[9] Copia del expediente administrativo, págs. 6-9.
[10] Copia del expediente administrativo, págs. 6-7.
[11] Copia del expediente administrativo, pág. 6.

referida documentación surge la versión brindada por el miembro correccional en torno a los actos delictivos por los cuales fue sentenciado:

> Indicó que el 17 de agosto de 2006 asesinó a Jesús Álvarez Cruz en el Barrio Martorell en Yabucoa. Lo acusó el Sr. Rafael Gómez a quien conocía y tuvo problemas con el individuo, la víctima fue asesinada aproximadamente a las 11:10 p.m., no acepta la comisión de los hechos. También asesinó a otro hombre, Jesús Delgado Flecha en el negocio El Rincón de la Paz en Humacao. Por el caso de sustancias controladas indicó que en el D5 en la Institución Máxima Seguridad Ponce. En su celda se ocupó un cargador celular, 8 envolturas plástica que arrojaron positivo a heroína. En la cárcel federal cumplió sentencia de 160 meses por sustancias controladas y poseer Detainer por Probatoria Federal de (10) años.[12]

De manera consistente con el *Informe* y a base de su pericia, el Comité de Clasificación acordó unánimemente que el recurrente debe permanecer bajo la clasificación de custodia máxima. En aras de sostener su determinación, expuso en el *Acuerdo del Comité de Clasificación y Tratamiento* el siguiente pronunciamiento adoptado por la agencia:

> H. Fundamentos para los Acuerdos tomados: 1. Al aplicar la escala de reclasificación esta arroja custodia mínima, la puntuación obtenida por la escala no refleja los elementos para una evaluación objetiva y completa del caso. El MPC cumple sentencia de Reclusión Perpetua y se le impone una pena de Separación Permanente de la Sociedad por Asesinato, Conspiración y Ley de Armas. Por lo que el Comité de Clasificación y Tratamiento acoge modificación discrecional, Historial de Violencia Excesiva, el MPC di[o] muerte a dos seres humanos, en el primer caso, en una discusión en el negocio El Rincón de la Paz en Humacao, con su arma de fuego que poseía sin licencia le disparó a un hombre, por el otro Asesinato en el Barrio Martorell en Yabucoa, tuvo problemas con un hombre y lo asesinó de disparo, sin embargo, el mpc niega ser partícipe de este segundo hecho, siendo encontrado culpable en un Tribunal más allá de duda razonable y siendo declarado Delincuente Habitual y se le impuso sentencia de Reclusión Perpetua. Dicho acto quebrantó las normas que garantizan la sana convivencia de la sociedad, perfilándose así, como un ciudadano en completo desdén del bienestar de su comunidad y un peligro para la sociedad en general. Se utiliza modificación discrecional para nivel de custodia más alto. Desobediencia ante las normas. [C]uenta con historial de querellas disciplinarias relacionadas a Posesión, Distribución, uso, venta o introducción de teléfonos celulares o su tentativa. Posesión, introducción, uso, venta o distribución de narcóticos, sustancias controladas o drogas y/o la posesión de materiales asociados con el uso de sustancias controladas y Posesión de celulares o su tentativa, posesión de celular. También fue sentenciado por delitos cometido en prisión relacionados a sustancias controladas.[13]

De conformidad con lo anterior, eventualmente la agencia dictó *Resolución* y acogió tal historial fáctico y probatorio para establecer que el

---

[12] Copia del expediente administrativo, pág. 8.
[13] Copia del expediente administrativo, pág. 1.

señor Besares Rosado debe permanecer en el nivel de custodia máxima. Nótese que, dicho ente administrativo recurrió al mecanismo de modificaciones discrecionales para atender de modo adecuado el proceso de rehabilitación del recurrente. A esos efectos, en consideración a la prueba sustancial obrante en el expediente y de conformidad a la Sección III(D) del Apéndice K(I) del Manual de Clasificación (2020), concluyó de manera fundamentada que el recurrente presenta unos factores específicos, que ameritan una atención particularizada, a saber: (1) historial de violencia excesiva, (2) reincidencia habitual y (3) desobediencia ante las normas.

Sobre estas circunstancias, es menester puntualizar que aunque la escala evaluativa de renglones indica custodia mínima, tal hecho no impide ratificar la clasificación actual del recurrente a los fines de asegurar su proceso de rehabilitación. Por tanto, determinamos que la clasificación ratificada por el Comité es consistente con el examen normativo que exige ponderar el adecuado balance de intereses, es decir, efectuar una evaluación cuidadosa respecto al derecho a la rehabilitación y el adecuado funcionamiento de la entidad correccional. Véase *Cruz v. Administración*, supra, pág. 352.

En esa dirección, la agencia arribó a su determinación en consideración a ese balance de intereses al determinar la clasificación de custodia máxima conformidad a los parámetros establecidos en el Manual de Clasificación (2020). Por ello, especificó que por el momento le compete al recurrente beneficiarse del tratamiento de modificación de conducta que ofrece el Programa de Evaluación y Tratamiento. Así pues, resaltó que "continuará en su nivel de custodia actual, demostrando que está comprometido con el progreso de su rehabilitación y adquirió destrezas para funcionar en ambiente de menor supervisión".[14]

A la luz de lo anterior, resolvemos que la decisión impugnada no es arbitraria, irrazonable o ilegal, ni refleja una aplicación o interpretación

---

[14] Copia del expediente administrativo, pág. 14-15.

errónea de los cuerpos reglamentarios precitados. Reiteramos que el dictamen impugnado descansa en prueba sustancial que obra en el expediente administrativo. En vista de ello, nos corresponde ser deferentes y no intervenir en el análisis evaluativo emitido por el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación.

Por último, advertimos que la *Sentencia* de este Tribunal no implica que el señor Besares Rosado no tendrá la oportunidad de ser considerado para una posterior evaluación de clasificación custodia. Destacamos que, según las constancias del expediente administrativo, su próxima reclasificación corresponde a la fecha del 24 de abril de 2025.[15]

**IV.**

Por los fundamentos que anteceden, **confirmamos** la determinación recurrida del Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[15] Copia del expediente administrativo, pág. 3.